# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEITH CARNELL MAYBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV 05-182-P |
| | ) |
| MIKE MULLIN, et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER AND OPINION**

Now before the Court is Defendants' Motion for Summary Judgment and Plaintiff's Response thereto. Upon review of the briefs, and for reasons stated herein, Defendants' Motion is hereby GRANTED IN PART.

**Background**

The incident giving rise to this case occurred in the Oklahoma State Penitentiary in McAlester, Oklahoma, where Plaintiff was incarcerated. On July 21, 2003, Mayberry was released from his cell to go to the exercise yard for regularly scheduled exercise. While on the yard, Plaintiff was stabbed approximately thirty times by three other inmates who had concealed homemade weapons in their shoes. Plaintiff suffered serious injuries to his neck, back and abdomen, and ultimately lost sight in his left eye as a result of the attack.

Several penitentiary staff members entered the yard to respond to the attack. The officers ordered the uninvolved inmates to line up against the fall. They then ordered the participating inmates to drop their weapons. One of the attackers did not comply with the initial order, but did

1

drop his weapon the second time he was ordered to do so. Officers placed the three attackers in restraints. They then requested medical attention for Plaintiff. The entire incident, from the time the attack started until the ambulance departed with Plaintiff, lasted approximately thirty (30) minutes, and no more than forty-seven (47) minutes.

Plaintiff brought this suit alleging violations of his civil rights and seeking redress under 42 U.S.C. § 1983,[1] which provides that:

> [E]very person, who under color of any statute, ordinance, regulation, custom or usage of any state . . . subjects or causes to be subjected any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the constitution and laws, shall be liable to the party injured . . . .

Specifically, Plaintiff alleges that Defendants failed to adequately search all inmates and did not timely respond to the attack, in a violation of Plaintiff's Eighth Amendment rights. Plaintiff also alleges that Defendants Mullin and Rollins failed to properly train and supervise the other Defendants.[2] Defendants have challenged these claims via the Motion currently at issue.

## **Discussion**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The

---

[1] The Court dismissed all other claims brought by Plaintiff by its Order dated August 26, 2005.

[2] Defendants Larry Rollins and Simon Parrish have not yet been served.

2

evidence must be more than "merely colorable."  Id. at 249-50.  Further, the non-moving party's own testimony and conclusory allegations are generally insufficient to withstand summary judgment.  Id. at 248.  However, the Court must resolve all doubts in favor of the non-moving party.  Id. at 255.

**I.  The Prison Litigation Reform Act requires dismissal of Plaintiff's complaint.**

The Prison Litigation Reform Act (PLRA) states, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is not an affirmative defense, but a pleading requirement.  Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1211 (10th 2003).  Yet, Plaintiff here did not mention exhaustion in his Complaint and, in fact, admits that he was not able to complete the administrative process before he was injured in the incident giving rise to this lawsuit, and did not complete it afterwards.  Plaintiff contends that strict adherence to the exhaustion requirement would be "unduly burdensome" and "especially futile" in this case. [Pltf. Resp. at 9.]  However, "[t]he Supreme Court has refused to read futility or other exceptions into the § 1997e(a) exhaustion requirement.  Id. at 1214 (internal quotations and citations omitted).  Although the Court is sympathetic to Plaintiff's grievous injuries, the PLRA requires dismissal of his Complaint.  However, because dismissal under the PLRA is without prejudice, id. at 1213, the Court will also address the merits of Plaintiff's case.

**II.  Defendants are entitled to summary judgment on certain issues.**

Qualified immunity is a defense to a § 1983 claim.  Siegert v. Gilley, 500 U.S. 226, 231 (1991).  When qualified immunity is raised in a motion for summary judgment, the plaintiff must

3

show that the defendant acted unlawfully, and that said unlawful act violated some clearly established law. Hinton v. City of Elwood, 997 F.2d 774, 779 (10th Cir. 1993). If the plaintiff can make this proof, the burden then shifts to the defendant to show that those acts were objectively reasonable. Id. The purpose of the qualified immunity defense is to give "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal quotations and citations omitted). This standard also incorporates "due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." Farmer v. Brennan, 51 U.S. 825, 844-45 (1994) (internal quotations and citations omitted).

Under the Eighth Amendment, prison officials are required to take reasonable steps to ensure the safety of inmates, Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998), but they obviously cannot absolutely guarantee the inmates' safety, Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999). In order to establish an Eighth Amendment violation for failure to protect, Plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) officials acted with deliberate indifference to his safety. Farmer, 511 U.S. at 834. Here, Plaintiff first alleges that Defendants had prior knowledge of the danger of attack on Plaintiff. Second, Plaintiff alleges that Defendants did not conduct proper searches, in that they failed to detect the concealed weapons used to attack Plaintiff. Third, Plaintiff alleges that Defendants did not timely respond to the incident as it was unfolding. The Court finds that Defendants are entitled to judgment as a matter of law as to the first and second allegations, but

genuine issues of material fact prevent summary judgment as to the third.

> **A.** **Plaintiff cannot establish deliberate indifference based on Defendants' alleged "prior knowledge" of the threat to Plaintiff's safety.**

Plaintiff moved to the unit where he was housed when the incident occurred only four days before the attack. Plaintiff had notified prison officials prior to his move about potential problems with certain inmates, but none of the inmates identified by Plaintiff were on the yard when he was attacked. Of course, the Eighth Amendment does not require "advance notification of a substantial risk of assault posed by a **particular** fellow prisoner." Id. at 849 n.10 (emphasis added). When a prisoner **does** complain about particular inmates, however, the "substantial risk of serious harm" may certainly be perceived as less obvious or imminent by prison officials if said inmates are **not** present. Here, Plaintiff was not attacked by anyone who posed a known threat to him. It is well settled that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. According to this standard, the Court finds that Plaintiff cannot establish deliberate indifference on the part of these Defendants based on their alleged "prior knowledge" of the risk to Plaintiff. Defendants' Motion for Summary Judgment is therefore GRANTED as to this issue.

> **B.** **Defendants' searches were not conducted with "deliberate indifference."**

Every inmate on the yard when Plaintiff was attacked had been subjected to a thorough

5

search.³  Conducting these routine searches may be fairly considered a part of the prison officials' duty to ensure the "reasonable safety" of the inmates, even when no "substantial risk" is actually posed.  Further, if officials do know of such risk, they "may be found free from liability if they responded reasonably to the risk, **even if the harm ultimately was not averted**."  Id. at 844 (emphasis added).  Simply put, prison officials may be required to **search**, but will not necessarily be liable if they do not **find**.  Here, the failure to find the concealed weapons was, at most, negligent.  However, a claim for a constitutional violation must be judged according to the "deliberate indifference" standard, and not that of mere negligence.  *See* Estelle v. Gamble, 429 U.S. 97, 104 (1976) (defining "deliberate indifference" as "as state of mind more blameworthy than negligence"); Whitley v. Albers, 475 U.S. 312, 319 (1986) (finding that Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety"); Farmer, 511 U.S. at 835 (citing Estelle and Whitley for this proposition).  The Court finds that Defendants' searches not "deliberately indifferent," but were instead reasonable under the circumstances.  Defendants' Motion for Summary Judgment is therefore GRANTED as to this issue.

  **C.**  **A genuine issue of material fact exists as to the timeliness of Defendants' response once the attack began.**

Plaintiff also asserts that, once the attack commenced, prison officials stood idly by and

---

³According to prison policy, before leaving his cell, each inmate is required to strip to his underwear and pass his clothes to an officer.  The inmate then passes his underwear to an officer to be searched.  The inmate is then required to squat and cough, bend at the waist and spread his buttocks, lift his scrotum, open his mouth, and shake his hair vigorously.  The inmate's underwear is returned before he exits the cell.  The inmate is scanned with a metal detector while clad in his underwear, then taken to a common area to finish dressing.  Finally, each inmate is frisked by an officer immediately before entering the exercise yard.

allowed it to continue.  Reading the record in light most favorable to the Plaintiff, the Court finds that the entire incident lasted no more than forty-seven (47) minutes.  Prison officials began taking inmates to the exercise yard at 8:30 a.m.[4]  Officers were gathering more inmates when the attack occurred.  The yard was subject to video surveillance.  Officers saw Plaintiff's attackers stab him repeatedly before they reached the yard.[5]  When officers entered the yard, they ordered the non-participating inmates to line up against the wall, and they ordered the attackers to drop their weapons.  One attacker did not comply until he was ordered a second time.  Officers then placed the attackers in restraints.  Officers made an emergency call at approximately 8:45 a.m. An ambulance arrived at 9:07 a.m. and departed with Plaintiff at 9:17 a.m.

Once officials were aware that Plaintiff was being attacked, they were obligated to take reasonable steps to protect him.  Such duty to protect is not without limits, however.  For example, officials may be required to call for backup, and therefore be unable to immediately intervene.  *See, e.g.*, MacKay v. Farnsworth, 48 F.3d 491, 492 (10th Cir. 1995).  Also, officials are not required to put themselves at risk to break up a fight involving weapons.  *See, e.g.*, Peate v. McCann, 294 F.3d 879, 883 (7th Cir. 2002).  Here, officials ultimately responded to the situation, quelled the attack, and provided medical assistance to Plaintiff.  According to Plaintiff, however, officials watched the fight for nearly ten (10) minutes before they arrived on the yard. Defendants did not address this allegation.  A genuine issue of material fact therefore exists as to whether Defendants' response was timely, and thus, objectively reasonable.  This finding

---

[4]The record is unclear as to whether inmates were actually on the yard at 8:30 a.m., or whether they were being prepared (*i.e.*, being searched) to go on the yard at that time.

[5]The record is unclear as to whether officers observed the attack on the surveillance equipment or with their own eyes.

7

precludes summary judgment on the narrow issue of whether Defendants timely and appropriately responded once they had actual notice of the attack on Plaintiff. However, the Court's previous finding that the Complaint should be dismissed under the PLRA effectively disposes of this issue. *See* Fry v. al-Abduljalil, 2006 U.S. App. LEXIS 2474 at *5 (10th Cir. 2006) (citing Porter v. Nussle, 534 U.S. 516, 532 (2002), for the proposition that "[t]he exhaustion requirement applies to all suits regarding prison life, whether they challenge general circumstances or particular episodes").

### III. Plaintiff's failure to train and supervise claim is untenable.

"[I]n order to successfully assert a § 1983 claim under the Eighth Amendment for failure to protect, a plaintiff must show personal involvement or participation in the incident. Supervisor status alone is insufficient to support liability." Grimsley v. MacKay, 93 F.3d 676, 679 (10th Cir. 1996) (internal quotations and citations omitted). Instead, there must be a direct causal link between the supervisor's alleged failure to train or supervise and the plaintiff's alleged constitutional injury. *See* Lopez, 172 F.3d at 760. Here, Plaintiff asserts that Defendant Mullins "did not do anything to thwart the danger to Plaintiff, nor did he tell any of his officers to take any action to protect Plaintiff" and that prison officials were "obviously not trained sufficiently." [Pltf. Resp. at 13.] Because "[a]dequately trained officers occasionally make mistakes[, and the fact that they do says little about the training program" or the supervisor's skills, Plaintiff's bald allegations are wholly insufficient. *See* id. ("It is not enough . . . for [plaintiff] to show that there were general deficiencies in the . . . training program. . . . Rather, he must identify a specific deficiency . . . closely related to his ultimate injury, and must prove that the deficiency in training actually caused [the prison officials] to act with deliberate indifference

8

to his safety."); *see also* Grimsley, 93 F.3d at 679; Anderson v. Liberty Lobby, 477 U.S. at 248. Defendants' Motion for Summary Judgment is therefore GRANTED as to Plaintiff's failure to train and supervise claim.

**Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART. Defendants are entitled to judgment as a matter of law as to all issues, **except** the narrow issue of whether Defendants timely and appropriately responded once they had actual notice of the attack on Plaintiff. This remaining issue is DISMISSED without prejudice under the PLRA. There being no surviving claims, this case is hereby terminated.

IT IS SO ORDERED this 15th day of March 2006.

James H. Payne
United States District Judge
Eastern District of Oklahoma